UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL ART EXHIBITIONS, INC.,<br><br>                    Plaintiff<br><br>         v.<br><br>KUHN & BÜLOW ITALIA INSURANCE BROKER GmbH, ERGO INSURANCE COMPANY plc, MANNHEIMER VERSICHERUNG AG, BASLER VERSICHERUNGS AG, HELVETIA SWISS INSURANCE COMPANY AG, and GOTHAER INSURANCE COMPANY plc,<br><br>                    Defendants | C.A. No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### NATURE OF THE ACTION

1. This is an action by Plaintiff Global Art Exhibitions, Inc., for breach of contract to recover proceeds under a policy of insurance arranged for by Defendant Kuhn & Bülow Italia Insurance Broker GmbH and issued jointly by Defendants ERGO Insurance Company plc, Mannheimer Versicherung AG, Basler Versicherungs AG, Helvetia Swiss Insurance Company AG, and Gothaer Insurance Company plc.

2. Among other objects of art, the insurance policy covered twelve works, six of which were by the Italian master painter Amedeo Modigliani, three of which were by the renowned French painter Moïse Kisling, and three of which were collaborations by Modigliani and Kisling, for a total insured value of approximately $107,107,000 that were exhibited together at Palazzo Ducale in Genoa, Italy, from March 15, to July 16, 2017 (the "Exhibition"). The insurance policy also provided Global and its assignors with a total of approximately $6,648,000

of additional insurance coverage for the costs incurred to resume possession of any or all of the artworks confiscated during the exhibition.

3. Twenty one works were seized from the exhibition, including twelve works arranged through Global. The Modigliani works were seized by Italian authorities under an unsubstantiated claim of forgery. Although the underlying claim of forgery has not been resolved, despite Plaintiff Global's repeated demands for their return, the seized works of art remain in the possession of the Italian authorities. In addition, despite Plaintiff Global's repeated demands for payment under the insurance policies, Defendants have failed and refused to pay the costs incurred to resume possession of the seized paintings.

## PARTIES

4. Plaintiff Global Art Exhibitions, Inc. ("Global") is a privately held company organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

5. Defendant Kuhn & Bülow Italia Insurance Broker GmbH ("K&B") is an Italian corporation with its headquarters in Rome, Italy. K&B is a fine art insurance broker and it conducts business worldwide, including in the United States. K&B is a wholly owned subsidiary of Kuhn & Bülow Versicherungsmakler GmbH and part of the Kuhn & Bülow Insurance Broker Group, one of the largest fine art insurance brokers in the world.

6. Defendant ERGO Insurance Company plc ("ERGO") is a German corporation with its headquarters in Dusseldorf, Germany. Defendant ERGO is one of the major insurance companies in Germany and Europe, and it conducts business worldwide, including in the United States. Defendant ERGO is a wholly owned subsidiary of the insurance company Munich Re, a leading global provider of reinsurance, primary insurance and insurance-related risk solutions.

7. Mannheimer Versicherung AG ("Mannheimer") is a German corporation with its headquarters in Mannheim, Germany. Among other things, Defendant Mannheimer specializes in providing transport insurance and it conducts business worldwide, including in the United States.

8. Defendant Basler Versicherungs AG ("Basler") is a Swiss company with its headquarters in Basel, Switzerland. Among other things, Defendant Basler specializes in providing art insurance and it conducts business worldwide, including in the United States. Defendant Basler is an indirect wholly owned subsidiary of Baloise Group ("Baloise"), a worldwide provider of insurance and pension solutions through a variety of subsidiaries.

9. Defendant Helvetia Swiss Insurance Company AG ("Helvetia") is a Swiss corporation with its headquarters in Basel, Switzerland. Among other things, Defendant Helvetia specializes in providing art insurance and it conducts business worldwide, including in the United States. Defendant Helvetia is a wholly owned subsidiary of Helvetia Group, a globally active Swiss insurance group with its principal place of business in St. Gallen, Switzerland.

10. Defendant Gothaer Insurance Company plc ("Gothaer") is a German corporation with its headquarters in Cologne, Germany. Among other things, Defendant Helvetia specializes in providing art insurance and it conducts business worldwide, including in the United States. Defendant Gothaer is a wholly owned subsidiary of Gothaer Group, a leading provider of a broad range of insurance services.

11. Defendants ERGO, Mannheimer, Basler, Helvetia, and Gothaer are collectively referred to as the "Insurer Defendants."

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), because Plaintiff

Global is a citizen of this State and Defendants are citizens or subjects of foreign states who are not lawfully admitted for permanent residence in the United States and are not domiciled in this State, and the matter in controversy exceeds the sum or value of $75,000 exclusive of interests and costs.

13. Venue is proper in this Court because Plaintiff Global resides in or regularly conducts business in New York City and because Defendants regularly conduct business in New York City.

14. 14. In particular, Defendant K&B arranged for, procured, and brokered an all-risk insurance policy for 14 objects of art, ten of which were to be transported from their owners in New York City to Genoa for the Exhibition at Palazzo Ducale in 2017, and then were to be returned to their owners in New York City at the conclusion of the Exhibition. The insurance policy insured against all risks during the Exhibition and during the round-trip travel from their places of origin to Genoa and back to their places of origin, ten of which to be returned to New York City.

15. Thus, Defendant K&B conducted business in New York City and held itself out as authorized to do business in New York City in connection with the insurance brokerage service it provided to Global and the other owners whose paintings were exhibited in Genoa.

16. Likewise, the Insurer Defendants issued an all-risk policy of insurance and insured, among other objects of art, the twelve Modigliani and Kisling works against all risks, ten of which were to be transported from their owners in New York City to Genoa for an exhibition at Palazzo Ducale in 2017 and then returned to their owners in New York City at the conclusion of the exhibition. The insurance policy insured against all risks during the Exhibition and during the round-trip travel from their places of origin to Genoa and back to their places of

4

origin, nine of which to be returned to New York City.

17. Thus, the Insurer Defendants conducted business in New York City and held themselves out as authorized to do business and doing business in New York City in connection with the issuance of the insurance policies they provided to Plaintiff and the other owners whose paintings were exhibited in Genoa.

## SUBSTANTIVE ALLEGATIONS

18. Plaintiff Global is fine arts dealer and exhibitor in galleries in the United States and throughout the world. Global is also owner of two of the paintings on loan for the Exhibition, Modigliani's Ristratto di Maria Modigliani and Cariatide Rouge.

19. Global is also the assignee from each and every other owner of the objects of art that were on loan for the Exhibition of the right to pursue claims for defense costs and related damages against Defendants under the Policy in connection with the Exhibition.

20. At the request of MondoMostre Skira s.r.l. ("Skira"), a major Italian organizer and producer of art exhibitions and the company that organized and produced the Exhibition, Global arranged for the loan of a total of 14 works of art for the exhibition. Of those 14 works to be shown in the Exhibition, six were by Modigliani, the famed Italian painter and sculptor, three were by the French painter Kisling, and three others were collaborations by Modigliani and Kisling.

21. The lenders of twelve other Modigliani and Kisling paintings to be included in the Exhibition authorized Global to act on their behalf to arrange for all risk insurance covering the objects of art during the Exhibition and during the round-trip travel from their places of origin to Genoa for the Exhibition and then back to their places of origin at the conclusion of the Exhibition.

22. In connection with the Exhibition, acting at the request of Global on its own behalf and on behalf of the other art lenders, Skira contacted Defendant K&B to serve as an insurance broker and to procure and obtain an all risk policy of insurance, Policy No. EP 1032, issued in February 2017 for the period from on or about February 15, 2017 through on or about August 16, 2017, covering the objects of art shown in the Exhibition (the "Policy"). The Policy was never provided to Plaintiff or any other owner of the objects of art on loan for the Exhibition.

23. Defendant K&B issued the Terms and Conditions of Art Insurance 2016 ("Terms and Conditions") governing the issuance of insurance (a true and correct copy of which is attached hereto as Exhibit A). K&B did not provide the Terms and Conditions until after Plaintiff contacted K&B following the seizure of the objects of art.

24. Although a single insurance policy was obtained and issued, a separate Certificate of Insurance ("Certificate") was issued for each Modigliani or Kisling work of art shown in the Exhibition, including the following:

(a) Amadeo Modigliani, Nudo desteso, olio su tela, cm 65 x 100, insured for €42,000,000 (or approximately $43,341,000) (a true and correct copy of which is attached hereto as Exhibit B);

(b) Amadeo Modigliani, Ritratto di Maria Modigliani, oilo su cartone, cm 66 x 54, insured for $28,000,000 (a true and correct copy of which is attached hereto as Exhibit C);

(c) Amadeo Modigliani, Cariatide Rouge, olio su tela, cm 80 x 58.5, insured for $22,000,000 (a true and correct copy of which is attached hereto as Exhibit D);

(d) Amadeo Modigliani, Cariatide a Genoux, gouache su carta, cm 35 x27.4, insured

for $5,500,000 (a true and correct copy of which is attached hereto as Exhibit E);

(e) Amadeo Modigliani – Moïse Kisling, L'atelier de Moise Kisling, olio su tela, cm 66 x 63.5, insured for €2,100,000 (or approximately $2,344,000) (a true and correct copy of which is attached hereto as Exhibit F);

(f) Amadeo Modigliani, Natura morta con ritratto di M. Kisling, olio su tela, cm 75 x 84, insured for €1,500,000 (or approximately $1,674,000) (a true and correct copy of which is attached hereto as Exhibit G);

(g) Amadeo Modigliani – Moïse Kisling, L'atelier de Moise Kisling, olio su tela, cm 55.5 x 77, insured for $1,200,000 (a true and correct copy of which is attached hereto as Exhibit H);

(h) Moïse Kisling, Nu allonge, Ingrid, olio su tela, cm 65 x 110, insured for $1,200,000 (a true and correct copy of which is attached hereto as Exhibit I);

(i) Amadeo Modigliani, Donna seduta, matita su carta, cm 43 x 25.5, insured for €380,000 (or approximately $424,000) (a true and correct copy of which is also attached hereto as Exhibit G);

(j) Moïse Kisling, Madame Hanka Zaborowska dans l'Atelier de Kisling, olio su tela, cm 75 x 57, insured for $850,000 (a true and correct copy of which is attached hereto as Exhibit J);

(k) Moïse Kisling, Jeune Femme Assise, Kiki, olio su tela, cm 92 x73, insured for €380,000 (or approximately $424,000) (a true and correct copy of which is attached hereto as Exhibit K); and

(l) Amadeo Modigliani, Portrait of Jean Cocteau, matita su carta, cm 38 x 26, insured for $150,000 (a true and correct copy of which is attached hereto as

Exhibit M).

25. The Policy covered the objects of art from all risks of loss during the Exhibition and also while they were in transport to and from Palazzo Ducale in Genoa, referred to in the art world as "nail to nail" coverage, beginning no earlier than February 15, 2017, and ending no later than August 16, 2017 (the "Period of Coverage").

26. The Policy was designated "All Risk" in the Certificates and, as stated in the Certificates, the Policy covered all risks of loss to the objects of art, including in particular "100%" of any depreciation from the stated and agreed value of each work of art during the Period of Coverage, risk of loss from physical damage (with certain exceptions not relevant to any claim or contention herein), risk of loss from theft and burglary, and damage during shipping.

27. In addition, as stated in each and every Certificate, the Policy expressly provided additional insurance in the amount of €500,000 (or approximately $554,000) for each individual object of art, for a total of €6,000,000 (or approximately $6,648,000) for twelve of the Modigliani and Kisling paintings included in the Exhibition, against the risk of confiscation, which provided for reimbursement of the costs (including court costs and legal fees) each insured party might have to bear to resume possession of any confiscated object of art. The amounts of confiscation coverage were in addition to the other amounts of coverage provided under the All Risk Policy.

28. The Policy was issued jointly by all five Insurer Defendants, each of which insured a percentage of the total insurance procured for the fine art exhibited at Palazzo Ducale. As specified in the Certificates, the Insurer Defendants identified as "participating in the policy" and their stated percentages of insurance on the fine art included in the Exhibition are as follows:

| Insurer | Percentage of Coverage |
|---|---|
| "ERGO Insurance Company" | 28.5% |
| "Mannheimer Insurance, Berlin" | 20.0% |
| "Basler Insurance Company" | 18.6% |
| "Helvetia Insurance Company AG" | 18.6% |
| "Gothaer Insurance Company plc" | 14.3% |

29.     Defendant ERGO served as the leading underwriter of the Policy and directed the Insurer Defendants' actions under the Policy, including the decision whether to deny coverage under the Policy. The other Insurer Defendants expressly agreed to be and were bound by Defendant ERGO's directions, including the decision to deny coverage under the Policy as alleged herein.

30.     Nine of the seized Modigliani and Kisling paintings covered by the Policy were transported from New York City to Genoa for the Exhibition, and were to be transported back to New York at the conclusion of the Exhibition. Those nine paintings are:

(a) Modigliani's Ritratto di Maria Modigliani;

(b) Modigliani's Cariatide Rouge;

(c) Modigliani's Cariatide a Genoux;

(d) Modigliani and Kisling's L'atelier de Moise Kisling;

(e) Modigliani and Kisling's L'atelier de Moise Kisling;

(f) Kisling's Nu allonge;

(g) Kisling's Jeune Femme Assise; and

(h) Modigliani's Portrait of Jean Cocteau; and

(i) Kisling's Madame Hanka Zabrowska.

31.     One of the paintings covered by the Policy, Modigliani's Nudo desteso, was transported from Zurich, Switzerland to Genoa for the Exhibition, and was to be transported back to Zurich at the conclusion of the Exhibition.

32. Two of the paintings covered by the Policy, Modigliani's Natura morta and Donna seduta, were transported from Tel Aviv, Israel to Genoa for the Exhibition, and were to be transported back to Tel Aviv at the conclusion of the Exhibition.

33. All of the paintings that are the subject of this action were displayed at Palazzo Ducale in Genoa beginning in on or about March 15, 2017.

34. Prior to the Exhibition, most, if not all, of the Modigliani and Kisling works covered by the Policy had been exhibited publicly many times over the years.

35. Shortly after the Exhibition began, Carlo Pepi ("Pepi") of Tuscany, Italy, a self-proclaimed expert on Modigliani paintings, challenged the authenticity of the master painter's works on display.

36. Acting on the basis of Pepi's challenge, Italian authorities seized several objects of art, including the Modigliani and Kisling works of art described above, and closed the Exhibition in July 2017.

37. Many of the seized Modigliani and Kisling works included in the Exhibition have impeccable and unassailable provenances. For example, one of the paintings, Modigliani's Maria, has been exhibited since at least 1929, was the subject of a newspaper article in 1963, and has a condition report from the Getty Conservation Institute dated 1995 attesting to its validity.

38. Another of the works, Modigliani's Donna Seduta, was sold in 1989 in a public auction by the acclaimed auction house Sotheby's London, one of the world's premier auction destinations for fine art and luxury objects since 1744.

39. Modigliani's Donna Seduta had been stolen while in transit from a prior exhibition and was recovered by the Italian Carabinieri, one of Italy's main law enforcement agencies that is charged with protecting Italy's artistic heritage.

40. No final determination has been made of the authenticity of any of the paintings seized by the Italian police on Pepi's word. A trial is set for June of 2020 and is likely to last at least two years.

41. Global notified Defendants of the seizure of the objects of art promptly after the seizure and without any undue or unreasonable delay.

42. Global has made repeated demands for return of the objects of art and is making every effort to defend the works, but they remain seized by Italian authorities.

43. Global, on behalf of itself and the other owners of the paintings on loan for the Exibition, has demanded coverage from Defendants under the Policy for reimbursement of the costs (including court costs and legal fees) each insured party has borne and might have to bear to resume possession of the objects of art from the Italian authorities, but Defendants have failed and refused to provide such coverage.

44. Global and the other lenders of paintings for the Exhibition are and have been injured in connection with their ownership of their objects of art and in their defense against the unfounded accusations of forgery by virtue of being deprived possession of their works and by being deprived of the funds with which to obtain their return and establish their authenticity.

45. The Terms and Conditions provide that interest at the rate of 4% per annum must be paid on the compensation due under the Policy from the notification of the claim until the compensation is paid.

46. The Insurance Defendants have an incentive not to provide insurance coverage because by depriving Plaintiff and the other owners of insured objects of art, they increase the likelihood that the works will be adjudicated to be forgeries by the Italian court, and thus the Insurance Defendants will avoid their obligation to pay Plaintiff and the other owners of insured

objects of art for any diminution in the value of their works.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against the Insurer Defendants)

47. Plaintiff repeats and realleges paragraphs 1 through 46 above as if set forth herein at length.

48. The Policy required each and every one of the Insurer Defendants to advance to Plaintiff and the other owners of the paintings on loan for the Exhibition as insured parties reimbursement of the costs (including court costs and legal fees) that each insured party might have to bear to resume possession of the objects of art from the Italian authorities, in the proportions of coverage set forth in the Certificates.

49. By failing and refusing to advance reimbursement of the costs (including court costs and legal fees) each insured party might have to bear to resume possession of the objects of art from the Italian authorities, in the proportions of coverage set forth in the Certificates, each and every one of the Insurer Defendants has materially breached the Policy.

50. Skira has fully paid the premium for the Policy, and Plaintiff and the other owners of the paintings on loan for the Exhibition have fully performed all their other obligations under the Policy.

51. As a direct, natural, and foreseeable consequence of the Insurer Defendants' material breaches of the Policy, Plaintiff and the other owners of the paintings on loan for the Exhibition have been and continue to be damaged in the amount of at least several hundred thousand dollars.

52. As a further direct, natural, and foreseeable consequence of the Insurer Defendants' material breaches of the Policy, Plaintiff and the other owners of the paintings on

loan for the Exhibition have been and continue to be damaged in connection with their ownership of their objects of art and in their defense against the unfounded accusations of forgery by virtue of being deprived possession of their paintings and by being deprived of the funds with which to obtain their return and establish their authenticity.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against Defendant K&B)

53. Plaintiff repeats and realleges paragraphs 1 through 46 above as if set forth herein at length.

54. Defendant K&B agreed and undertook to obtain and procure a policy of insurance providing all risk insurance coverage for Plaintiff and the other the other owners of paintings on loan for the Exhibition as insured parties, including coverage for reimbursement of the costs (including court costs and legal fees) each insured party might have to bear to resume possession of any objects of art seized during the Exhibition.

55. Defendant K&B materially breached its agreement by failing to obtain and procure a policy of insurance providing all risk insurance coverage for Plaintiff and the other the other lenders of paintings for the Exhibition as insured parties, including coverage for reimbursement of the costs (including court costs and legal fees) each insured party might have to bear to resume possession of any objects of art seized during the Exhibition.

56. As a direct, natural, and foreseeable consequence of Defendant K&B's material breach of its agreement, Plaintiff and the other owners of the paintings on loan for the Exhibition have been and continue to be damaged in the amount of at least several hundred thousand dollars.

57. As a further direct, natural, and foreseeable consequence of Defendant K&B's

material breach of its agreement, Plaintiff and the other owners of the paintings on loan for the Exhibition have been and continue to be damaged in connection with their ownership of their objects of art and in their defense against the unfounded accusations of forgery by virtue of being deprived possession of their paintings and by being deprived of the funds with which to obtain their return and establish their authenticity.

**THIRD CAUSE OF ACTION**
**NEGLIGENCE AND GROSS NEGLIGENCE**
**(Against Defendant K&B)**

58.     Plaintiff repeats and realleges paragraphs 1 through 46 above as if set forth herein at length.

59.     By virtue of its role as insurance broker and agent for Plaintiff and the other the other owners of paintings on loan for the Exhibition as insured parties, Defendant K&B undertook a duty to exercise ordinary and reasonable care in obtaining and procuring a suitable all risk insurance policy, including in particular coverage for reimbursement of the costs (including court costs and legal fees) each insured party might have to bear to resume possession of any objects of art seized during the Exhibition.

60.     Defendant K&B failed to exercise ordinary and reasonable care in obtaining and procuring a suitable all risk insurance policy, including in particular coverage for reimbursement of the costs (including court costs and legal fees) each insured party might have to bear to resume possession of any objects of art seized during the Exhibition.

61.     Thus, Defendant K&B was negligent in the performance of its professional duties as an insurance agent and broker.

62.     Defendant K&B's failure to exercise ordinary and reasonable care in obtaining and procuring a suitable all risk insurance policy was an extreme departure from acceptable

standards of care for a professional engaged in the business of insurance agency and brokerage.

63. Thus, Defendant K&B was grossly negligent in the performance of its professional duties as an insurance agent and broker.

64. As a direct, natural, and foreseeable consequence of Defendant K&B's negligence and gross negligence, Plaintiff and the other owners of the paintings on loan for the Exhibition have been and continue to be damaged in the amount of at least several hundred thousand dollars.

65. As a further direct, natural, and foreseeable consequence of Defendant K&B's negligence and gross negligence, Plaintiff and the other owners of the paintings on loan for the Exhibition have been and continue to be damaged in connection with their ownership of their objects of art and in their defense against the unfounded accusations of forgery by virtue of being deprived possession of their paintings and by being deprived of the funds with which to obtain their return and establish their authenticity.

## FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
## (Against Defendant K&B)

66. Plaintiff repeats and realleges paragraphs 1 through 46 above as if set forth herein at length.

67. As a direct, natural, and foreseeable consequence of the Insurer Defendants' material breaches of the Policy, Plaintiff and the other owners of the paintings on loan for the Exhibition have been and continue to be damaged in the amount of at least several hundred thousand dollars.

68. As a further direct, natural, and foreseeable consequence of the Insurer Defendants' material breaches of the Policy, Plaintiff and the other owners of the paintings on

loan for the Exhibition have been and continue to be damaged in connection with their ownership of their objects of art and in their defense against the unfounded accusations of forgery by virtue of being deprived possession of their paintings and by being deprived of the funds with which to obtain their return and establish their authenticity.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, or individually, as follows:

A.  Judgment in amount necessary to compensate Plaintiff fully for its losses and for the losses of the other owners of the objects of art on loan for the Exhibition, together with pre- and post-judgment interest thereon;

B.  A preliminary and permanent injunction compelling the Insurer Defendants to perform their obligations under the Policy, to provide reimbursement coverage under the Policy, and to reimburse Plaintiff for the costs (including court costs and legal fees) each insured party might have to bear to resume possession of the paintings seized during the Exhibition;

C.  Judgment awarding costs, including reasonable attorneys' fees and costs to Plaintiff;

D.  Judgment awarding punitive and exemplary damages to Plaintiff; and

E.  Such other and further relief as the Court deems necessary and proper.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: February 14, 2020                        WOLF HALDENSTEIN ADLER
                                                FREEMAN & HERZ LLP

                                        By:    *s/ Mark C. Rifkin*
                                                Mark C. Rifkin
                                                Benjamin Y. Kaufman

270 Madison Ave.
9th Floor
New York, NY  10016
Tel: (212) 545-4600

*Attorneys for Plaintiff*