```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GLOBAL ART EXHIBITIONS, INC.,

                            Plaintiff,

        -against-

KUHN & BÜLOW ITALIA
VERSICHERUNGSMAKLER GMBH,
ERGO VERSICHERUNGS AG,
MANNHEIMER VERSICHERUNG AG,
BASLER SACHVERSICHERUNGS-AG,
HELVETIA SCHWEIZERISCHE
VERSICHERUNGSGESELLSCHAFT IN
LIECHTENSTEIN AG, and GOTHAER
ALLGEMEINE VERSICHERUNG AG,

                            Defendants.
---------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/2021

20-CV-1395 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Plaintiff Global Art Exhibitions, Inc. ("Global Art") brings this action against five European insurers ("Insurer Defendants") and insurance broker Kuhn & Bülow Italia Versicherungsmakler GmbH, alleging, *inter alia*, breach of the insurance contract covering works of art that Global Art arranged to send to an exhibition in Genoa, Italy. Global Art contends that, after Italian authorities seized these works as suspected forgeries, Insurer Defendants were obligated to advance its legal costs as it seeks to establish the works as authentic. Insurer Defendants have moved to dismiss on the grounds of lack of personal jurisdiction, *forum non conveniens*, lack of subject matter jurisdiction, and failure to state a claim.

For the reasons that follow, the motion is GRANTED in part and DENIED in part on the basis of personal jurisdiction. The Court will withhold consideration of the other asserted

grounds to dismiss until such point that Insurer Defendants come into compliance with New York Insurance Law § 1213(c).

## BACKGROUND

Plaintiff Global Art is a privately held Delaware company that sells and exhibits works of fine art and has its principal place of business in New York, New York. (First Amended Complaint ("FAC") ¶¶ 16, 34, ECF No. 55.) An Italian art exhibition organizer, MondoMostre Skira s.r.l ("Skira"), requested the assistance of Global Art as Skira organized an exhibition to be held at the Palazzo Ducale in Genoa, Italy. (*Id.* ¶¶ 2, 36.) Global Art arranged for the lending of at least twelve works by the Italian painter Amedeo Modigliani and French painter Moïse Kisling. (*Id.* ¶¶ 34, 36–37.)[1] Two of these works are owned by Global Art, which also arranged for the loan of the works owned by others. (*Id.*)

Defendant Kuhn & Bülow Italia Versicherungsmakler GmbH ("Kuhn & Bülow") is a German insurance broker upon which Skira called to arrange for insurance to cover works lent for the Genoa exhibition. (*Id.* ¶ 38.) Kuhn & Bülow coordinated the creation of Policy No. EP 1032, an "all-risk" insurance policy that, in pertinent part, covered the twelve Modigliani and Kisling works shown in the Genoa exhibition that were lent by or through Global Art. (*Id.* ¶ 40.) The five other defendants in this case ("Insurer Defendants") are insurance firms based in Germany or Liechtenstein that each insured a specified percentage of the policy covering the works displayed in Genoa. (*See id.* ¶ 46.) Global Art or the relevant owner received individual "Certificates of Insurance" specifying the coverage for the twelve works in question. These

---

[1] There is ambiguity in the complaint regarding whether the number of Modigliani and Kisling works lent by or through Global Art totaled twelve or fourteen. What is clear is that there were nine such works originally from New York City that were lent by or through Global Art, insured by Insurer Defendants, and seized by Italian authorities. (*See* FAC ¶ 48.)

certificates state that the insurance policy is a so-called "nail-to-nail" policy, which provides coverage up to the value of the work from almost any conceivable form of loss, depreciation, damage, or theft occurring between the departure of the work from its place of origin and its return after the exhibition. (*See, e.g.*, *id.*, Ex. C §§ 1–4.) Notably, section 5 of the "Written Agreements" appended to each certificate is a clause specifying that if the work were to be confiscated, the insurers would reimburse up to €500,000 for court and legal fees required to regain possession of the work. (*See, e.g.*, *id.*, Ex. C § 5.) The other owners whose works were lent through Global Art assigned to Global Art the right to pursue "defense costs and related damages" under the policy. (*Id.* ¶ 35.) Skira paid the premiums for the policy in full. (*Id.* ¶ 72.)

The exhibition did not go smoothly. Acting upon allegations of inauthenticity, Italian authorities seized twenty-one works from the exhibition, including twelve lent by or through Global Art. (*Id.* ¶¶ 3, 53–54.) Legal proceedings in Italy relating to the seized artwork have been ongoing since at least mid-2018 (Frischknecht Decl., Ex. B, ECF No. 82) and remain pending (FAC ¶ 58). Global Art has repeatedly demanded the return of the twelve seized Modigliani and Kisling works, but they remain in the custody of Italian officials. (*Id.* ¶ 60.)

Global Art brought this case. As relevant to this decision, the First Amended Complaint alleges that the five Insurer Defendants breached their contractual obligations by failing to advance court costs and legal fees necessary for Global Art to regain possession of the twelve works of art. (*Id.* ¶ 71.) Insurer Defendants filed the instant motion to dismiss. (ECF No. 64.)

## LEGAL STANDARD

In a Rule 12(b)(2) motion to dismiss, a plaintiff has the burden of establishing the court's personal jurisdiction over the defendant. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). When a court adjudicates such a motion in reliance on the pleadings and the

parties' affidavits, rather than a full evidentiary hearing, the plaintiff need make only a prima facie showing of personal jurisdiction with the pleadings and affidavits construed in the light most favorable to the plaintiff. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

"[A] district court sitting in a diversity action such as this may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). This Court thus conducts a two-part analysis, first determining whether the laws of New York provide for personal jurisdiction and second assessing whether the exercise of jurisdiction comports with the federal Due Process Clause. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

## DISCUSSION

Insurer Defendants move to dismiss the First Amended Complaint on four asserted grounds: lack of personal jurisdiction, *forum non conveniens*, lack of subject matter jurisdiction, and failure to state a claim. The Court holds that Global Art has made a prima facie showing that personal jurisdiction exists for the claims relating to the nine works of art originating in New York City, but not for the three works based abroad. Because the New York Insurance Law requires unauthorized non-U.S. insurers to post security with the Court before litigating on the merits, the remaining asserted grounds for dismissal are held in abeyance.

### I. Security Requirement

New York Insurance Law § 1213 permits the Court to adjudicate only one aspect of the pending motion to dismiss at this time: the assertion that the Court does not have personal jurisdiction over Insurer Defendants. Section 1213(c) requires that a non-U.S. insurer that is not

authorized to do an insurance business in New York must post with the Clerk of Court securities "sufficient to secure payment of any final judgment" before it "files any pleading in any proceeding against it" in New York. N.Y. Ins. L. § 1213(c)(1). Alternative paths to compliance with section 1213(c) are available only if the New York Superintendent of Financial Services ("Superintendent") first certifies that the insurer maintains sufficient assets in New York to satisfy any judgment against it or the insurer obtains a license to operate an insurance business in New York. *Id.* This security requirement applies to non-U.S. insurers regardless of "the manner of service or the type of purposeful activity providing the basis for the exercise of in personam jurisdiction." *Travelers Ins. Co. v. Underwriting Members of Lloyd's of London*, 659 N.Y.S.2d 11, 12 (N.Y. App. Div. 1997) (internal citation omitted). The bond is typically set at the amount a plaintiff demands in her complaint, i.e., the amount which might be necessary to satisfy a final judgment. *See, e.g.*, *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, 147 F.R.D. 40, 51 (S.D.N.Y. 1993) (Stewart, J.).

The set of "pleadings" covered by this bond requirement is expansive, encompassing motions to dismiss and other defenses on the merits. *Levin v. Intercontinental Cas. Ins. Co.*, 742 N.E.2d 109, 111–12 & n.3 (N.Y. 2000). Yet, the statute explicitly carves out from this list certain motions to set aside service. N.Y. Ins. L. § 1213(c)(3). Moreover, while not expressly excepted by statute, New York courts also adjudicate unauthorized insurers' motions to dismiss for lack of personal jurisdiction without requiring the posting of a bond. *See Jiang v. Ping An Ins.*, 118 N.Y.S.3d 17, 19 (N.Y. App. Div. 2020).[2] Consideration of other defenses on the

---

[2] The Second Circuit has held the section 1213(c) security requirement to be a prejudgment attachment of an insurer's property. *Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, 212 F.3d 138, 142 (2d Cir. 2000). Accordingly, this requirement may be applied to an insurer defendant's out-of-state property only if the Court has personal jurisdiction over the insurer. *See Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 829 (N.Y. 2009) ("It is well established that, where personal jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction.").

merits, including motions to dismiss for lack of subject matter jurisdiction and failure to state a claim, requires an unauthorized non-U.S. insurer first to comply with section 1213(c). It is also appropriate to withhold pre-security adjudication of *forum non conveniens* arguments, to avoid the possibility of a non-New York insurer "wag[ing] extensive, costly motion practice, and yet avoid[ing] the bond requirement by simply advancing a host of defenses before interposing a formal answer." *Levin*, 742 N.E.2d at 112.

There is no question that Insurer Defendants are "alien insurers" within the meaning of the New York Insurance Law. *See* N.Y. Ins. L. § 107(a)(5). Nor is there doubt that they are unauthorized to do an insurance business in the state. (*See* FAC ¶ 25.) Thus, the other grounds on which Insurer Defendants move to dismiss will be held in abeyance until they have satisfied the New York Insurance Law's security requirement. *See Jiang*, 118 N.Y.S.3d at 19.[3]

## II. Personal Jurisdiction

### A. New York's Long-Arm Statute

The first part of the two-step personal jurisdiction analysis assesses whether New York's statutes provide for personal jurisdiction over Insurer Defendants. Because neither party has suggested that the Court has general jurisdiction over these parties, the inquiry hinges on whether either New York's long-arm statute or the New York Insurance Law provides for specific jurisdiction over these defendants. *See* N.Y. C.P.L.R. § 302(a); N.Y. Ins. L. § 1213(b). Because Global Art's cause of action arises from Insurer Defendants' contracts to insure against risk in New York, this Court has personal jurisdiction over Insurer Defendants with respect to the alleged breach of contract regarding the nine New York–based works of art.

---

[3] Insurer Defendants may also, of course, become licensed to do an insurance business in New York or cause the Superintendent to certify that they maintain sufficient funds in New York to satisfy any judgment and seek an order from the Court relieving them from the security requirement. *See* N.Y. Ins. L. § 1213(c)(1).

The applicable portion of New York's long-arm statute provides for personal jurisdiction over a non-domiciliary defendant when (1) that party either "transacts any business within the state" or "contracts anywhere to supply goods or services in the state" and (2) a plaintiff asserts "a cause of action arising from" those acts. N.Y. C.P.L.R. § 302(a), (a)(1).[4] The Second Circuit has held that insuring a risk in New York satisfies the "contracts anywhere to supply . . . services in the state" prong. *See Armada Supply Inc. v. Wright*, 858 F.2d 842, 849 (2d Cir. 1988) ("Clearly, contracting to insure property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign []insurer to jurisdiction on suits over such insurance."); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 81 (2d Cir. 1993) (holding a financial guaranty to be a contract to supply a service in New York). Insurer Defendants entered into a "nail-to-nail" insurance contract by which they insured the nine New York–based works against all risks from the time they were packed and shipped from their original location in New York City to the moment they were returned to New York, including their time on exhibition in Italy. Lower courts in New York regularly hold agreements to insure such risks in the state to satisfy the first element of section 302(a)(1). *See, e.g.*, *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 179–80 (E.D.N.Y. 2015); *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121 JPO, 2014 WL 7008938, at *4 (S.D.N.Y. Dec. 12, 2014) (Oetken, J.); *Constantine v. Stella Maris Ins. Co.*, 948 N.Y.S.2d 802, 805 (N.Y. App. Div. 2012); *Ins. Co. of N. Am. v. Pyramid Ins. Co. of Bermuda*, No. 92 CIV. 1816, 1994 WL 88754, at *2 (S.D.N.Y. Mar. 16, 1994) (Sotomayor, J.).

---

[4] Insurer Defendants note that the First Amended Complaint discusses only New York Insurance Law § 1213 as a source of personal jurisdiction and does not specifically name N.Y. C.P.L.R. § 302. This is of no concern—a complaint must allege *facts* sufficient to establish personal jurisdiction, not legal theories. *See Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("All complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory. . . . At base, the Rules [of Civil Procedure] command us never to exalt form over substance." (emphasis omitted)).

Insurer Defendants' attempt to cabin *Armada Supply* to cases in which a defendant has substantial additional contacts with New York fails. Their contention rests on a decision that applied the aspect of *Armada Supply* regarding the "transacts business" prong of section 302(a)(1), rather than its holding regarding the "contracts anywhere to supply . . . services in the state" prong applicable here. *See Drucker Cornell v. Assicurazioni Generali S.p.A. Consol.*, No. 97 CIV. 2262 (MBM), 2000 WL 284222, at *6 (S.D.N.Y. Mar. 16, 2000) (Mukasey, J.). Then-Judge Sotomayor made clear the distinction, dispatching with a similar argument by noting that the "extensiveness of contacts . . . was not germane to that portion of the *Armada Supply* holding that controls here—that is, the application of the 'contracts anywhere' wording in § 302." *Pyramid Insurance*, 1994 WL 88754, at *2.

Global Art's claims arise from Insurer Defendants' New York–facing acts, satisfying the second element of section 302(a)(1). A "relatively permissive" standard governs this requirement, necessitating only an "articulable nexus" or "substantial relationship" between the asserted claim and the underlying, New York–facing conduct. *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012). The breach of contract alleged in this case arises from the contract into which Insurer Defendants entered—the very same agreement by which the insurers "contract[ed] anywhere to supply . . . services in the state" by insuring New York–based works of art on their round trip from New York to Italy and back again. N.Y. C.P.L.R. § 302(a)(1). That Insurer Defendants' obligations under this contract were allegedly triggered based on events that occurred while the works were in Italy does not make these claims "completely unmoored" from the underlying contract to supply services in New York. *Licci*, 984 N.E.2d at 900.

8

Global Art also urges that personal jurisdiction exists under New York Insurance Law § 1213. This argument is superfluous with respect to the claims relating to the nine New York–based works of art—one ground of personal jurisdiction is sufficient—and no more useful for the claims relating to the three non-U.S. works of art. A precondition to having service of process on the Superintendent establish personal jurisdiction over a non-U.S. insurer is that the insurer has issued or delivered "contracts of insurance" to New York domiciliaries. N.Y. Ins. L. § 1213(b)(1). Even if the "Certificates of Insurance" in this case are policies or contracts of insurance in the meaning of the statute, the complaint does not allege that they were issued or delivered to a New York resident "*by an unauthorized foreign or alien insurer*[.]" *Id.* (emphasis added). This is fatal to establishing personal jurisdiction under section 1213. The Court thus will not resolve the question of whether purporting to serve process on the Superintendent can support personal jurisdiction over a defendant insurer if that service occurs after the defendant has filed a motion to dismiss. *See id.* § 1213(b)(1)–(2).

### B. Due Process

The exercise of personal jurisdiction also comports with the Due Process Clause of the federal Constitution. It would suffice to note that "a contrary conclusion regarding due process is foreclosed by the Court's determination that jurisdiction is proper under CPLR § 302(a), which has narrower boundaries than the Due Process Clause." *Danaher*, 2014 WL 7008938, at *7 (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) and *Armada Supply*, 858 F.2d at 849).

But to address the issue at more length, Insurer Defendants have sufficient "minimum contacts" with New York that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Longstanding

law in this circuit provides that contracting to insure a risk in New York establishes sufficient minimum contacts with the state to be subject to suit here. *See Armada Supply*, 858 F.2d at 849. Insurer Defendants fall flat in their extensive efforts to analogize this case to *Lexington Insurance Co. v. Hotai Insurance Co.*, 938 F.3d 874 (7th Cir. 2019). That decision considered a policy of worldwide products-liability insurance and held that the policy did not establish minimum contacts between the insurer and Wisconsin merely by virtue of Wisconsin being among the areas encompassed in "worldwide" coverage. *Id.* at 882. This line of reasoning is inapplicable to the situation at hand, in which Global Art's claims arise from Insurer Defendants' forum conduct, i.e., contracting to insure New York–based works of art against risks during their trip from New York to Italy and back again.

It is also reasonable to subject Insurer Defendants to suit in New York. The Court applies the traditional factors for assessing reasonableness:

> [1] the burden on the defendant, [2] the interests of the forum State, . . . [3] the plaintiff's interest in obtaining relief[,] . . . [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987)). The second, third, and fifth factors weigh strongly in favor of personal jurisdiction. "New York has an extremely strong interest in ensuring that insurers follow through on the commitments they make to New York citizens." *Twin City Fire Ins. Co. v. Harel Ins. Co.*, No. 10 Cv. 7842 (BSJ) (GWG), 2011 WL 3480948, at *3 (S.D.N.Y. Aug. 5, 2011) (Jones, J.). This interest is reflected in the state's statutory framework to ensure that unauthorized insurers can satisfy any judgment before they may litigate against a New York domiciliary such as Global Art, whose own interest in relief is manifest.

10

Numerous American states share this concern, as their residents would be harmed if large, non-U.S. insurers could renege on their obligations safe in the knowledge that few U.S. residents could bear the costs to litigate in far-away locales where the insurers' assets are held.

While litigating in New York creates some burden on Insurer Defendants, the first factor is far from prohibitive.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996) ("[T]he conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.").  Any remaining inconvenience of litigating abroad "cuts both ways," as Global Art would be burdened if proceedings were conducted in Europe.  *Chloe*, 616 F.3d at 173.  Finally, considering the fourth factor, the evidence relating to Italian legal proceedings is in that country, making the interstate judicial system's interest in efficiency not substantially better served by litigating in Insurer Defendants' preferred locale of Germany.

## CONCLUSION

For the foregoing reasons, Insurer Defendants' motion to dismiss is GRANTED as to the claims related to the three non-U.S. works and DENIED as to the claims related to the nine New York–based works.  Insurer Defendants' other asserted grounds for dismissal are held in abeyance.  Global Art's motion for oral argument is DENIED.

If Insurer Defendants seek consideration of their other asserted grounds for dismissal, they must come into compliance with New York Insurance Law § 1213(c) by January 4, 2022.  They may do so by posting security or bond with the Clerk of Court valued at a total of €4.5 million[5] or by certifying that they have each become licensed to do an insurance business in New

---

[5] Any conversion to U.S. dollars shall be calculated at the prevailing exchange rate of 1 euro to 1.1367 dollars listed in today's edition of the *Wall Street Journal*.  *See Markets Digest*, Wall St. J., Nov. 16, 2021, at B7.

York. The Court will otherwise deny the remainder of the pending motion to dismiss. Either party may move by December 16, 2021, with a showing of good cause, to increase or decrease the amount of the bond.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 77. The motion at ECF No. 64 may be left pending.

SO ORDERED.

Dated: New York, New York
November 16, 2021

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge

---

If one or more Insurer Defendants comes into compliance with section 1213(c) in a way other than the posting of securities or bond—or declines to continue to seek dismissal of this litigation—the security requirement for the other Insurer Defendants will be pro-rated to the percentage of the policy for which each insurer is responsible. (*See* FAC ¶ 46.)